Sarah Shapero (Bar No. 286748)
SHAPERO LAW FIRM
100 Pine St., Ste. 530
San Francisco, CA 94111
Telephone:     (415) 273-3504
Facsimile:      (415) 273-3508

Attorney for Plaintiff,
VAHE TASHJIAN

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAHE TASHJIAN, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>INVICTUS RESIDENTIAL POOLER – 2A, a Delaware company, RECOVCO MORTGAGE MANAGEMENT, LLC, a Delaware limited liability company; SPROUT MORTGAGE CORPORATION, a Delaware corporation, SPECIALIZED LOAN SERVICING LLC a Delaware limited liability company; NEW PENN FINANCIAL LLC DBA SHELLPOINT MORTGAGE SERVICING, a Delaware limited liability company; et al.<br>                              Defendant | Case No. 5:19-cv-01536-EJD<br>Case No. 5:20-cv-08816-EJD<br><br>**JOINT TRIAL SETTING CONFERENCE STATEMENT**<br><br>Date:  May 4, 2023<br>Time: 11:00 a.m.<br>Ctrm: 4, 5th Floor<br><br>**[REMOTE/TELEPHONIC APPEARANCES REQUESTED]** |

Plaintiff Vahe Tashjian ("Plaintiff") and Defendants[1], Planet Home Lending, LLC ("Planet Home"), Specialized Loan Servicing LLC ("SLS"), Prestige Default Services, LLC, Invictus Residential Pooler Trust 2A ("Invictus"), and NewRez LLC fka New Penn Financial, LLC dba Shellpoint Mortgage Servicing ("Shellpoint") jointly submit this Joint Trial Setting

---

[1] Counsel for Defendants Sprout Mortgage Asset Trust and Recovco Mortgage Management, LLC filed a Motion to Withdraw as Counsel of Record which is set for hearing on June 1, 2023.

1
JOINT TRIAL SETTING CONFERENCE STATEMENT

155854.00601/131046611v.3

Conference Statement pursuant to the Court's November 23, 2022 Order (Docket Entry 149). Planet Home, SLS, Invictus, and Shellpoint are collectively referred to as "Defendants."

**1. Jurisdiction & Service**

This Court has subject matter jurisdiction over the claims in this matter pursuant to 28 U.S.C. §§ 1331, 1332 and 1441.  There is complete diversity between the Plaintiff on the one side and the Defendants.  The amount in controversy is met.  Additionally, Plaintiff brings a federal claim under the Real Estate Settlement Procedures Act ("RESPA"), codified at 12 U.S.C. §§ 2601-2617 and a claim under the Fair Credit Reporting Act ("FRCA"), codified at 15 U.S.C. § 1681 *et seq*.

**2. Facts**

Plaintiff's Statement:

Plaintiff and Recovo entered into a loan for the principal sum of $3,307,500. Pursuant to and as part of the Loan agreement, on January 30, 2018, Recovco and Plaintiff entered into a written and executed agreement providing for an initial interest only period.  SLS, the servicer of the loan initially, began charging Plaintiff for principal and interest at the outset.

Plaintiff alleges he paid the correct interest only payment due of $17,226.56 and contacted SLS and other defendants regarding their MPN payment calculation and demanded that their error be corrected and the correct amount submitted by Plaintiff be accepted. SLS sent an April 18, 2018 correspondence to Plaintiff which stated, "according to our records, the above referenced mortgage account is delinquent" and threatened to commence foreclosure proceedings.

On May 4, 2018, Plaintiff received correspondence from Shellpoint confirming that the Loan had been transferred to Shellpoint from SLS.  On or around May 28, 2018, Plaintiff, through his counsel, demanded that Shellpoint/SLS and all defendants correct its error, accept Plaintiff's correct and proper monthly loan payments, and notified Shellpoint/SLS to cease any wrongful foreclosure activities based upon its error in determining the amounts due under the

Loan, and demanded that it cease and/or immediately correct reporting any derogatory or incorrect default reporting against Plaintiff to credit reporting agencies. By letter dated August 6, 2018, defendant Shellpoint acknowledged its error in miscalculating the monthly loan payments due during the 7-year interest-only period and apologized for "any inconvenience regarding the issue." Nonetheless, Defendants have reported derogatory and incorrect information to CRAs regarding the Loan and have incorrectly and improperly reported that Plaintiff was past due on such Loan as well as the amounts due and owing including the False Loan Information. The loan has since transferred to various other servicers and beneficiaries and the interest only issue has never been adequately resolved.

Planet Home's Statement:

On or about January 31, 2018, Plaintiff obtained a mortgage loan from Recovco in the original principal amount of $3,307,500.00 (the "Loan"). Thereafter, a dispute between Plaintiff and Recovco arose regarding whether repayment under the terms of the Loan agreement included payment of interest and principal, and the parties thereafter entered into a one-page loan modification agreement dated January 30, 2018, providing for interest-only payments for the first seven years of the Loan.

Recovco sold the Loan to Invictus on or about February 2, 2018. Thereafter, Plaintiff, Invictus, and Invictus' loan servicer, Shellpoint, reached a settlement agreement in December 2018 whereby the Loan was modified in line with the terms set forth in the January 30, 2018 letter agreement between Plaintiff and Recovco ("Settlement Agreement"). On December 21, 2018, Plaintiff signed a Loan Modification Agreement reflecting those terms. Invictus sold the Loan to Sprout in or around December 2018. Thereafter, Plaintiff made a total of six payments on May 29, 2019, which were applied to the months of December 2018 through May 2019, respectively. Plaintiff made another payment on May 31, 2019, which was applied to the month of June 2019. Since that May 31, 2019 payment, Plaintiff has defaulted on the Loan and has failed to make any additional payments whatsoever.

Almost two years after filing the Invictus Lawsuit, on October 9, 2020, Plaintiff filed a separate lawsuit ("Planet Home Complaint") against Planet Home and Sprout and other defendants.  As to the Planet Home Complaint, Plaintiff alleges causes of action against Planet Home for: (1) Breach of Written Contract; (2) Breach of the Covenant of Good Faith and Fair Dealing; (3) Unfair Business Practices, Bus. & Prof. Code § 17200; (4) Fair Credit Report Act, 15 U.S.C. § 1681E(B); (5) Intentional Misrepresentation; (6) Negligent Misrepresentation; (7) California Homeowners Bill of Rights, Civ. Code §§ 2923.5, 2924.9, 2924.17; (8) California Homeowners Bill of Rights, Civ. Code § 2923.55; (9) Wrongful Foreclosure; and (10) Injunctive Relief.  Plaintiff filed the Planet Home Complaint for the purpose of stopping a scheduled foreclosure sale premised upon his undisputed default on the Loan.  Plaintiff secured a preliminary injunction in the Planet Home Complaint while the action was pending in state court. .  As a condition of the preliminary order, the Planet Home trial court required Plaintiff to post an undertaking in the amount of $304,000.  Plaintiff allegedly filed that undertaking, but third parties have since sued Plaintiff in relation to those undertaking funds, and the state trial Court issued a preliminary injunction effectively seizing those undertaking funds on the basis Plaintiff had no right to said funds in the first place.  Planet Home filed a Motion to Dissolve the Preliminary Injunction on those grounds, which was granted in part through an order of the Court directing Plaintiff to deposit a replacement undertaking in the same amount.

Just as with the Invictus Action, the Planet Home Complaint relies largely on group pleading, asserting collective allegations against a broad swath of "Lenders" including such uniquely situated parties as the Loan's owner and servicers.  By lumping these different parties into singular categories of "Defendants" and "Lenders," and asserting collective allegations against them, Plaintiff fails to plead any specificity with respect to "Defendants' wrongful acts," rendering it impossible for defendants to ascertain which alleged conduct is being attributed to them or to understand Plaintiff's theory of causation and/or damages as to each specific defendant.  When asked during deposition what his damages claims were against Planet Home specifically, he could not quantify or identify what exactly he attributes to Planet Home.  In the

Planet Home Complaint, Plaintiff also does not specify which defendants, if any, reported him to any of the credit reporting agencies. During deposition he testified that any credit reporting prior to November 2019 could not have come from Planet Home. When asked why he has not made any payments on the Loan since 2019, he said it was because of this lawsuit.

In the Summer of last year, the Loan was bought and transferred to ARCPE 1 LLC. A Corporate Assignment of Deed of Trust reflecting this was recorded on August 16, 2022. Thereafter, the Loan was transferred to Palm Avenue Hialeah Trust, and a Corporate Assignment of Deed of Trust reflecting this was recorded on September 2, 2022. However, neither of these two entities have been named as a defendant in either lawsuit.

SLS's Statement:

The Complaint asserts claims in the lead action against Defendants for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) Fair Credit Reporting Act violations, and (4) UCL violations. As addressed herein, Plaintiff's allegations against SLS are premised on his primary theory that SLS demanded incorrect loan amounts from Plaintiff during the two months it serviced his loan. More specifically, Plaintiff alleges he was only required to make interest-only payments based on a single page modification he received from Recovco. Thus, the Complaint alleges that SLS improperly demanded full principal and interest payments, even though that was consistent with the terms of his Note and Deed of Trust.

However, the evidence shows that Plaintiff's purported interest-only agreement with Recovco was ineffective at loan origination. After Plaintiff obtained the Loan from Recovco, servicing transferred to SLS in February 2018. At that time, Plaintiff's operative loan documents provided, among other things, that Plaintiff was required to make monthly payments totaling $20,364.85 (comprised of principal and interest) beginning on March 1, 2018. Although Plaintiff alleges he entered into a separate interest-only agreement with Recovco, that purported agreement was never documented or indeed finalized at loan origination. Nor were the interest-only terms reflected anywhere in the operative loan documents or disclosures to

Plaintiff. In fact, discovery has revealed that Recovco failed to execute the interest-only agreement until about April 17, 2018, which was nearly two months *after* loan origination and *after* Recovco already sold the loan to Invictus.

Shortly thereafter, SLS service released the loan to Shellpoint effective May 1, 2018. SLS has not had any involvement with the loan since April 30, 2018. Further, at no point during the time SLS serviced the loan did Plaintiff ever make a single payment to SLS (whether under the interest-only agreement or under his operative loan documents). Although the Complaint alleges otherwise, Plaintiff has admitted that he failed to make any payments to SLS and admitted during his deposition that he has no evidence showing otherwise.

After SLS service released the loan to Shellpoint, Plaintiff, Shellpoint, and Invictus entered into a Settlement Agreement in December 2018, which released all of Plaintiff's claims asserted in the lead action. The release covers Plaintiff's claims against SLS as an "agent" of Invictus. Although Plaintiff has alleged he rescinded those agreements, there is no evidence to support such an alleged rescission based on mistake. SLS denies the Complaint's allegations and denies that Plaintiff is entitled to any relief in this action.

Shellpoint and Invictus' Statement:

Shellpoint began servicing the loan on May 1, 2018 for Invictus, and ceased servicing the loan on November 7, 2019. In addition, as stated above, Invictus no longer owns the loan. For the sake of brevity, Shellpoint and Invictus included herein the statements made by the defendants above, and deny Plaintiff's allegations against them in the Invictus Complaint, and deny that Plaintiff is entitled to any relief against them.

Further, Shellpoint and Invictus state that the discovery conducted in the action evidences that Plaintiff's alleged damages are not related to any of the alleged actions or omissions of Defendants Shellpoint and Invictus. In fact, Plaintiff's responses and the information obtained from third parties through discovery shows not only that neither Shellpoint nor Invictus caused Plaintiff to suffer the damages he asserts in his entirely speculative discovery responses, such discovery also makes it clear that he has no evidence to

support any of his alleged damages in his discovery responses against them. Moreover, discovery to date has shown that Plaintiff's losses were caused by his own actions, including by his intentional refusal to pay his loan payments on the subject loan after he brought it current in mid-2019 resulting in his again defaulting on his loan, and his severe mis-management of his real estate projects and disputes with his investors for those projects

**3. Legal Issues**

Plaintiff's Statement:

Plaintiff contends that the legal issues in this case are:

1) Whether Defendants breached the Deed of Trust or breached the implied covenant of good faith and fair dealing?

2) Whether Defendants violated the Business and Professions Code?

3) Whether Defendants violated the FCRA.

4) Whether Defendants made negligent or intentional misrepresentations?

5) Whether Defendants violated the HBOR?

Defendants' Statement:

In addition to the issues Plaintiff presents, Defendants contend the following issues must also be resolved:

1. Whether Plaintiff released his claims against Shellpoint, Invictus and SLS through the Settlement Agreement which arose prior to the effective date of the Settlement Agreement.

    - Cal. Evid. Code §1542; *Meyer v. Benko*, 55 Cal. App. 3d 937, 943 (1976) ("The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its explicit provisions are contrary to his intentions or understanding.").

2. Whether Plaintiff's claim that he rescinded the Settlement Agreement and/or the Loan Modification Agreement based on mistake fails.

- *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1588 (2005) (Among other things, the party claiming unilateral mistake must prove he does not bear the risk of the mistake (i.e., that he is not at fault for his own mistake)); *Y'TY Indus. SDN. BHD. v. Dow Chem. Co.*, No. CV 05-8881 SGL AJWX, 2009 WL 3633871 (C.D. Cal. Oct. 28, 2009) (For bilateral mistake, plaintiff must prove among other things, that the mistake did not result from plaintiff's neglect of his legal duty, and that he does not bear the risk of the mistake); CACI 331 (elements of bilateral mistake).

3. Whether the interest-only agreement between Recovco and Plaintiff was unenforceable because Recovco lacked standing to execute the agreement *after* it had already sold the loan to Invictus.

4. Whether Plaintiff's FCRA claim is barred because he failed to obtain a "consumer report" as defined by the FCRA, and whether it is barred because the purpose for which Plaintiff sought to obtain the credit at issue was for the business and real estate transactions set forth in the Complaint and in his discovery responses.

- 15 U.S.C. §1681a(d)(1) (FCRA's definition of a "consumer report"); 55 FedReg. 18811, 18814 (1990); *Natale v. TRW, Inc.,* 1999 U.S. Dist. LEXIS 3882, *9-12, 1999 WL 17678 (N.D. Ca. March 30, 1999); *Mone v. Dranow,* 945 F.2d 306, 308 (9th Cir. 1991) ("Reports used for 'business, commercial, or professional purposes' are not within the purview of the [FCRA]", and relying on the FCRA's legislative history to conclude Congress did not intend for the FCRA to extend to reports used for commercial purposes).

5. Whether the failure to submit a Notice of Dispute to a credit reporting agency ("CRA") after entry into the Settlement Agreement bars Plaintiff's FCRA claim.

- Cal. Evid. Code §1542; *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) (Furnisher's Section 1681s-2(b) obligations "arise only after the furnisher receives a notice of dispute from a CRA; notice of a dispute

received directly from the consumer does not trigger furnishers' duties under [§ 1681s-2(b)].").

6. Whether Plaintiff can maintain any cause of action for breach of contract and breach of the implied covenant against his former loan servicers (Shellpoint and SLS) in connection with the Promissory Note and Deed of Trust given that Plaintiff had no contractual relationship with his former servicers.

   - *Galope v. Deutsche Bank Nat'l Tr. Co.,* 666 F. App'x 671, 674 (9th Cir. 2016) ("there is no contractual relationship between a mortgagor and a loan servicer").

7. Whether Plaintiff's inability to establish the existence of breach of contract, breach of the implied covenant, and FCRA violations precludes Plaintiff from recovering under California's unfair competition law ("UCL") claim.

   - *Gaitan v. Mortgage Elec. Registration Sys., Inc.*, No. EDCV 09-1009 VAP (MANx), 2009 WL 3244729, at *7 (C.D. Cal. Oct. 5, 2009) (where a plaintiff cannot state a claim for the predicate acts upon which he bases an unfair competition claim, the unfair competition claim must also be dismissed).

8. Whether Plaintiff's UCL claim fails as a matter of law as to SLS because Plaintiff never made any payments on the loan to SLS and SLS has had no involvement with the loan since May 2018 and cannot be subject to injunctive relief.  In addition, whether Plaintiff's UCL claim fails as a matter of law as to Shellpoint and Invictus because Shellpoint had no involvement with the loan since November 7, 2019, and Invictus also has had no involvement with the loan for years.

   - *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) ("[p]revailing plaintiffs are generally limited to injunctive relief and restitution" under the UCL).

155854.00601/131046611v.3

9. Whether Plaintiff is barred from recovering damages in whole or in part against Defendants, or any of them, based on his failure to mitigate his alleged damages (if any).

- *Shaffer v. Debbas*, 17 Cal. App. 4th 33, 41 (1993) (A plaintiff has a duty to mitigate damages and cannot recover losses it could have avoided through reasonable efforts); *Valle de Oro Bank v. Gamboa,* 26 Cal. App. 4th 1686, 1691 (1994) ("One has an obligation to avoid an unwarranted enhancement of damages 'through passive indifference or stubborn insistence upon a conceived legal right'").

10. Whether Plaintiff lacks standing to recover any damages in this case because all of his claimed losses were losses sustained by limited liability companies, and therefore, cannot be recovered by Plaintiff.

- *Denevi v. LGCC, LLC*, 121 Cal. App. 4th 1211, 1214 n. 1 (2004) ("Like corporate shareholders, members of a limited liability company hold no direct ownership interest in the company's assets").

**4. Motions**

Plaintiff's Statement:

Plaintiff does not anticipate filing any motions but reserves the right to do so in the event it becomes necessary.

Defendants' Statement:

Defendants Shellpoint, Invictus, SLS, and Planet Home intend on filing motions for summary judgment. In addition, Defendants reserve the right to file appropriate evidentiary motions prior to trial, including but not limited to a *Daubert* motion in connection with Plaintiff's recently disclosed expert witness, and a motion to exclude any alleged claim for damages based on the FCRA .because Plaintiff's alleged damages are based the use of his credit reports for business and commercial purposes in connection with his real estate investment business.

**5. Discovery**

Fact Discovery has been completed in this action.

Expert discovery is ongoing with a cut-off of June 14, 2023. Plaintiff has designated a credit reporting damages expert. Defendants' deadline to designate any rebuttal expert(s) is May 15, 2023.

**6. Settlement and ADR**

The parties previously participated in a Mandatory Settlement Conference with the magistrate judge but the matter did not settle. There is another Mandatory Settlement Conference currently scheduled for May 10, 2023.

**7. Bifurcation**

The Parties do not believe any bifurcation is necessary at this time.

**8. Trial**

Plaintiff's Statement:

Plaintiff anticipates that he will be ready for trial in November 2023 and anticipates a two week jury trial. Plaintiff's counsel is not available for trial in August, September or October 2023 given Plaintiff's counsel's current trial calendar.

Defendants' Statement:

To the extent this case proceeds to trial, SLS estimates trial in this matter will last approximately 2 weeks. SLS has no objections to Plaintiff's proposed trial setting in November 2023.

Counsel for Planet Home is not available for trial in November of 2023 but is available in December 2023.

**9. Scheduling**

There are no other scheduling concerns that need to be addressed at this time.

Dated: April 20, 2023

**SHAPERO LAW FIRM, PC**

By: /s/ Sarah Shapero
Sarah Shapero
*Attorneys for Plaintiff*

Dated: April 20, 2023

**BLANK ROME LLP**

By: /s/ Nicole B. Metral
Michael A. Iannucci
Nicole B. Metral
Allen Ho
*Attorneys for Defendant,*
PLANET HOME LENDING, LLC

Dated: April 20, 2023

**YU | MOHANDESI LLP**

By: /s/ Sara E. Stratton
Pavel Ekmekchyan
Sara E. Stratton
*Attorneys for Defendant,*
SPECIALIZED LOAN SERVICING, LLC

Dated: April 20, 2023

**KLINEDINST PC**

By: /s/ Christine E. Howson
Ian A. Rambarran
Christine E. Howson
*Attorneys for Defendants,*
NEWREZ LLC FKA NEW PENN FINANCIAL LLC DBA SHELLPOINT MORTGAGE SERVICING; AND INVICTUS RESIDENTIAL POOLER TRUST 2A

155854.00601/131046611v.3